IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA KING, Administrator of the Estate of PAUL RICHARD KING, *Plaintiff,* v. NATIONAL RAILROAD PASSENGER CORPORATION, *Defendant.* | CIVIL ACTION NO. 23-3883 |

Pappert, J.                                                                                         February 16, 2024

**MEMORANDUM**

On May 12, 2022, Paul Richard King was struck and killed by a SEPTA train while walking across a railroad track owned by the National Railroad Passenger Corporation ("Amtrak"). His sister and administrator of his estate, Lisa, sued Amtrak, alleging it negligently caused Paul's death by failing to properly fence off the track. Amtrak moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court grants the Motion, but King may amend her Complaint to cure the deficiencies discussed below.

I

Amtrak owns railroad lines and builds fences to keep people away from them. (Compl. ¶¶ 6-7.) One of these rail lines runs past the dead end of National Street in Philadelphia. (*Id.* ¶ 8.) There is a "gaping hole" in the fence protecting the track, which King alleges people commonly walk through to access a residential area on the other side of the tracks. (*Id.* ¶¶ 8, 10, 25.) Paul walked through this hole and was hit by a SEPTA train. He died at the scene. (*Id.* ¶¶ 11, 18.)

1

Lisa King alleges Amtrak "knew or had reason to know" people were likely to go through the hole in the fence and walk across the tracks by National Street, and therefore knew or should have known that a "complete, well maintained-fence was necessary" to stop them from doing so. (*Id.* ¶¶ 10, 12, 15.) She also claims her brother's accident was foreseeable because Amtrak has experienced "a history of similar incidents." (*Id.* ¶ 17.) She brings state law negligence (Count I), wrongful death (Count II) and survival claims (Count III), seeking compensatory and punitive damages.

II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). "[C]onclusory assertions of fact and legal conclusions" are not entitled to the presumption of truth. *Schuchardt*, 839 F.3d at

347. While it requires plausibility, Rule 12(b)(6) does not impose a "probability requirement." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

## III

To state a claim for negligence under Pennsylvania law, a plaintiff must allege: (1) the existence of a legal duty; (2) a breach of that duty; and (3) a causal relationship between the defendant's breach of that duty and the plaintiff's damages. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 776 (3d Cir. 2018) (quoting *Green v. Pa. Hosp.*, 123 A.3d 310, 315-16 (Pa. 2015)). Whether a defendant breached a duty is generally a question of fact, but the existence of such a duty is a question of law. *Maas v. UPMC Presbyterian Shadyside*, 234 A.3d 427, 436 (Pa. 2020). To establish causation, a plaintiff must show cause in fact, or physical cause, as well as proximate or legal cause. *Redland Soccer Club v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995). While factual causation is normally a question for the jury, "proximate cause poses questions of law which require the court to determine whether the defendant's negligence was so remote that, as a matter of law, he cannot be held liable for the harm which subsequently occurred." *Id*; *see also Novak v. Jeannette Dist. Mem. Hosp.*, 600 A.2d 616, 618 (Pa. Super. Ct. 1991). Pennsylvania's Wrongful Death and Survival Act, "did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted." *Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 847 (M.D. Pa. 2016) (quotation omitted). "As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes." *Id.*

3

A

Amtrak argues, correctly, that King cannot state a negligence claim because Amtrak did not owe Paul a legal duty to maintain the fence. (Def.'s Mot. to Dismiss 2-3, ECF No. 7.) "Under Pennsylvania law, Amtrak has no duty to erect or maintain fences on its right-of-way." *Laurie v. Nat'l Passenger R.R. Co.*, 105 F. App'x 387, 391 (3d Cir. 2004); *see also Scarborough v. Lewis*, 565 A.2d 122, 126 (Pa. 1989) ("it long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers"). Under the Pennsylvania Railroad Civil Immunity Statute, "[a] railroad carrier owes no duty of care to keep its railroad property safe for entry or use by any trespasser who enters upon any railroad property or railroad right-of-way or to give any warning to such trespasser entering or going on that railroad property of a dangerous condition, use or activity thereon." 42 Pa. C.S. § 8339.1(a). The Railroad Civil Immunity Statute defines a trespasser as "[a] person who enters onto railroad property without any right, lawful authority or the express consent of the railroad." *Id.* § 8339.1(c). "Mere acquiescence to trespassing does not alter an entrant's status" because "a foreseeable trespasser is still a trespasser." *Est. of Zimmerman v. Se. Pa. Transp. Auth.*, 168 F.3d 680, 686 (3d Cir. 1999).

King argues this rule should not foreclose her claim since she alleges Amtrak acted wantonly by refusing to repair the fence.[1] (Compl. ¶ 26) ("Amtrak's actions were

---

[1] Railroads "owe[] a duty to a trespasser to avoid willful or wanton misconduct." *Heller v. Consolidated Rail Corp.*, 576 F. Supp. 6, 9 (E.D. Pa. 1982); *see also* 42 Pa. C.S. § 8339.1(b) ("Nothing in this section limits in any way any liability which otherwise exists for willful or wanton failure to guard or warn against a dangerous condition, use or activity"); *Marsh v. Norfolk Southern, Inc.*, 243 F. Supp. 3d 557, 564 (M.D. Pa. 2017); *Manfred v. Nat'l R.R. Passenger Corp.*, 106 F. Supp. 3d 678, 682-83 (W.D. Pa. 2015) (quotations omitted). Willful and wanton misconduct are "two distinct concepts." *Manfred*, 106 F. Supp. 3d at 683. The Pennsylvania Supreme Court has explained the distinction:

willful, wanton, and reckless in flagrant disregard for the safety of the general public, and the foreseeable risks posed by ignoring the presence of a large opening in the fence adjacent to the train tracks"). But this argument fails because it does not change the fact that Amtrak had no duty to erect or maintain the fence.

Amtrak cannot have wantonly disregarded a nonexistent duty any more than it could have negligently done so. *See Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985) ("there can be no negligence where there is no duty of care"); *Wilson v. Moore Freightservice, Inc.*, No. 4:14-771, 2015 WL 1345261, 2015 U.S. Dist. LEXIS 37137, at *7 (M.D. Pa. Mar. 25, 2015) ("There can be no negligence claim when there is no duty of care established, even if a defendant's actions were careless, reckless, or inadvertent"); *Moss v. Reading Co*, 212 A.2d 226, 228-29 (Pa. 1965) (finding as a matter of law that a train engineer did not engage in willful or wanton conduct by failing to brake earlier than he did because the engineer did not yet have a duty to take emergency measures).

In *Laurie*, a sixteen-year-old girl entered Amtrak property through an opening in a fence, which was "in a state of disrepair." *Laurie*, 105 F. App'x at 388-89. She was struck and killed by a train while crossing the tracks. *Id.* The plaintiff made one of the same arguments King makes here, contending that even if the decedent was a

---

> willful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the trespasser's peril. Wanton misconduct, on the other hand, means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

*Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965). "Therefore, a party need not have actual prior knowledge of the danger in order to constitute wanton misconduct; rather, an actor will be liable if, from the facts known to him, he should have realized the imminent danger." *Manfred*, 106 F. Supp. 3d at 683.

5

trespasser, Amtrak acted "willfully and wantonly" toward them by "continu[ing] to operate high speed trains without mending the fence or policing the area," even though it knew "pedestrians us[ed] that area of the track as a shortcut." *Id.* at 391 n.2. "But Amtrak had no duty to take such measures." *Id.* Neither did it here.

B

King asserts, for the first time in her brief, that her brother was a licensee rather than a trespasser, and that Amtrak accordingly had a duty to warn him of dangers on the track. (Pl.'s Resp. to Mot. to Dismiss 11-15, ECF No. 10-3.) She relies on the permissive crossing doctrine. (*Id.*) A permissive crossing is "an express or implied license to pass over the . . . property of the railroad company." *Gaul v. Consolidated Rail Corp.*, 556 A.2d 892, 256 (Pa. Super. Ct. 1989). There must be "a defined footpath leading to a crossing over railway tracks which is being habitually used." *Id.* at 255 (quoting *Hamley v. George*, 76 A.2d 181, 183 (Pa. 1950). Such a crossing must be "restricted to a well-defined location" and "shown to be used frequently, notoriously[] and continuously by the public." *Id.* at 256. Whether a permissive crossing exists is a determination "made on the facts of each case." *Id.*

A permissive crossing "places upon the railway company the duty of care comparable to that required at a regular crossing." *Id.* at 255 (quoting *Hamley*, 76 A.2d at 183). According to the Pennsylvania Superior Court, railroads' duties at permissive crossings consist of "(a) keeping a lookout to see if persons are using the permissive crossing, (b) warning users of the train's approach, and (c) taking action to stop the train before reaching the permissive crossing if persons are using it." *Scarborough v. Lewis*, 518 A.2d 563, 573 (Pa. Super. Ct. 1986) (citing *Figard v. Pa. R.R. Co.*, 65 A.2d

411 (Pa. 1949)), *rev'd on other grounds* 565 A.2d 122 (Pa. 1989); *but see Laurie*, 105 F. App'x at 390-91 (assuming a permissive crossing existed but finding no duty to warn the decedent that crossing the track was dangerous because "there is no duty to warn of that which is obvious" (quoting *Di Marco v. Penn. R.R. Co.*, 183 A, 780, 781 (Pa. 1936)).

However, the Complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*, 837 F.3d 378, 383 (3d Cir. 2016) (cleaned up) (quotation omitted).[2] King does not explicitly allege that there was a permissive crossing at the end of National Street, though the Complaint contains some facts that could show one plausibly exists.[3] But the Complaint does not allege Paul was a licensee, that Amtrak owed Paul any duty beyond maintaining the fence, that Amtrak breached any such duty, or that a breach of that duty caused Paul's death.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2] King's briefing also refers to other theories of negligence involving SEPTA's conduct instead of Amtrak's. The Court cannot consider these allegations for the same reason. And King has not sued SEPTA. *See* Fed. R. Civ. P. 10(a).

[3] King alleges it was "common practice" for people to walk through the "gaping hole in the fencing" to cross the tracks and access the residential area on the other side. She further alleges Paul was crossing the tracks on a habitually used, distinct crossing point. (*Id.* ¶¶ 8-10, 25.)